UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Henry T. Nelson,
    Claimant

    v.                           Case No. 15-cv-37-SM
                                      Opinion No. 2016 DNH 067
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), claimant, Henry T. Nelson, moves to reverse or vacate the Acting Commissioner's decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(c). The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I.   Procedural History.

In 2012, Nelson filed an application for Disability Insurance Benefits, alleging that he had been unable to work since October 31, 2010, due to degenerative disc disease, anxiety and confusion (depression).  Administrative Record ("Admin. Rec.") at 137-154, 172-187.  That application was denied (Admin. Rec. at 59-86), and claimant requested a hearing before an Administrative Law Judge ("ALJ") (Admin. Rec. at 87-88).

On August 13, 2012, Nelson, his attorney, and a vocational expert appeared before an ALJ, who considered claimant's application de novo.  Admin. Rec. at 29-51.  Two weeks later, the ALJ issued her written decision, concluding that Nelson was not disabled, as that term is defined in the Act, at any time prior to the date of her decision.  Id. at 16-24.

Nelson then sought review of the ALJ's decision by the Appeals Council.  Admin. Rec. at 12.  By notice dated November 28, 2014, the Appeals Council denied Nelson's request for review.  Admin. Rec. at 1-6.  Accordingly, the ALJ's denial of Nelson's application for benefits became the final decision of the Acting Commissioner, subject to judicial review.  Id. at 1.

Subsequently, Nelson filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.  Nelson then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8).  In response, the Acting Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 20).  Those motions are pending.

II.  Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 11), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

## Standard of Review

I.  "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g),

3

1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health &
Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial
evidence is "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion." Consolidated
Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something
less than a preponderance of the evidence, so the possibility of
drawing two inconsistent conclusions from the evidence does not
prevent an administrative agency's finding from being supported
by substantial evidence.  Consolo v. Federal Maritime Comm'n.,
383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402
U.S. 389, 401 (1971).

     This court's review of the ALJ's decision is, therefore,
both limited and deferential.  The court is not empowered to
consider claimant's application de novo, nor may it undertake an
independent assessment of whether she is disabled under the Act.
Rather, the court's inquiry is "limited to determining whether
the ALJ deployed the proper legal standards and found facts upon
the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31,
35 (1st Cir. 1999).  Provided the ALJ's findings are properly
supported by substantial evidence, the court must sustain those
findings even when there may also be substantial evidence
supporting the contrary position.  Such is the nature of
judicial review of disability benefit determinations.  See,

e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d
529, 535 (1st Cir. 1988); Rodriguez v. Secretary of Health &
Human Services, 647 F.2d 218, 222 (1st Cir. 1981).


II.   The Parties' Respective Burdens.

An individual seeking SSI and DIB benefits is disabled
under the Act if he or she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to
last for a continuous period of not less than 12 months."  42
U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The
Act places a heavy initial burden on the claimant to establish
the existence of a disabling impairment.  See Bowen v. Yuckert,
482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health &
Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that
burden, the claimant must prove, by a preponderance of the
evidence, that his impairment prevents him from performing his
former type of work.  See Gray v. Heckler, 760 F.2d 369, 371
(1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11
(D. Mass. 1982).  If the claimant demonstrates an inability to
perform his previous work, the burden shifts to the Commissioner
to show that there are other jobs in the national economy that
he can perform, in light of his age, education, and prior work

experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

## Background - The ALJ's Findings

In concluding that Nelson was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  Accordingly, she first determined that Nelson had not been engaged in substantial gainful employment since his alleged onset of disability: October 31, 2010.  Admin. Rec. at 18.  Next, she concluded that Nelson suffers from the following severe impairment: "degenerative disc disease of the lumbar spine."  Id.  She also considered Nelson's mental impairments, depression and anxiety, and determined that they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  Id. at 19.  The ALJ then determined that Nelson's impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Id. Nelson does not challenge any of those findings.

7

Next, the ALJ concluded that Nelson retained the residual functional capacity ("RFC") to perform the exertional demands of light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except that he can frequently balance and perform the remaining postural activities occasionally.[11]   Admin. Rec. at 20. She further noted that claimant can sustain concentration, persistence, and pace for two-hour blocks of time over an 8-hour work day and 40-hour workweek, consistent with regular breaks. Id.   In light of those restrictions, the ALJ concluded that claimant was not capable of returning to his prior job.   Id. at 23.

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform.   Relying on the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P,

---

[11]   "RFC is what an individual can still do despite his or her functional limitations.   RFC is an administrative assessment of the extent to which an individual's medically determinable impairments, including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.   Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."   Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

App. 2, the ALJ concluded that "there are jobs that exist in significant numbers that the claimant can perform." Id. The ALJ then concluded that claimant was not "disabled," as that term is defined in the Act, through the date of her decision.

## Discussion

Claimant challenges the ALJ's decision, asserting that she erred by failing to credit the views of Nelson's treating physician, Dr. Sharma, and instead relying on the DDS non-examining file reviewer, Dr. Fairley.

### I.   Dr. Fairley's Report

Nelson argues that the ALJ's reliance on Dr. Fairley's July 2012 report was improper largely because Dr. Fairley had not reviewed an MRI imaging performed after Fairley's evaluation in October 2012.  According to Nelson, the October 2012 MRI demonstrated "compression of the anterior thecal sac with narrowing of the canal on the right at L4-5[,] and raised the possibility of nerve compression of the nerves." Cl.'s Mot. to Reverse, p. 4.  While Dr. Fairley did review Nelson's x-rays prior to issuing his evaluation, Nelson argues that this is not sufficient because an MRI is a "much more sensitive" diagnostic tool.  Id.  Thus, says Nelson, because Dr. Fairley did not

review Nelson's MRI, the ALJ could not properly rely upon Dr. Fairley's report.

The Acting Commissioner disagrees, arguing the ALJ's reliance was entirely proper, because "absent evidence of a sustained (and material) worsening in Plaintiff's condition after Dr. Fairley reviewed the record (July 2012), the ALJ could continue to rely on such opinion."  Def.'s Mot. to Affirm, p. 5. The Acting Commissioner argues that the ALJ's continued reliance on Dr. Fairley's opinion was permissible because Nelson fails to point to specific evidence demonstrating that his back condition worsened after July 2012.

The Acting Commissioner has the better argument here. "As a general matter, an ALJ may place greater reliance on the assessment of a non-examining physician where the physician reviewed the reports of examining and treating doctors ... and supported his conclusions with reference to medical findings." Brown v. Colvin, No. 14-CV-256-JL, 2015 WL 4416971, at *3 (D.N.H. July 17, 2015) (quotation omitted).  Dr. Fairley's report suggests that he closely reviewed Nelson's medical records through July 2012, and then supported his conclusions with extensive discussion of those medical records as well as Nelson's own Function Report.  Accordingly, the ALJ was entitled

to rely upon the assessment.  Moss v. Astrue, No. 1:10-CV-054-JL, 2011 WL 1517988, at *16 (D.N.H. Apr. 21, 2011) ("The ALJ's decision to adopt an assessment by a non-treating physician is further supported if that assessment references specific medical findings indicating that the claimant's file was reviewed with care.") (additional citations omitted).

While claimant is correct that Dr. Fairley's July 2012 evaluation of Nelson was performed without the benefit of Nelson's October 2012 MRI results, this fact does not preclude the ALJ from relying on Fairley's assessment.  As the court has previously stated:

> It can indeed be reversible error for an administrative law judge to rely on an RFC opinion of a non-examining consultant when the consultant has not examined the full medical record." Strout v. Astrue, Civil No. 08-181-B-W, 2009 WL 214576, at *8 (D. Me. Jan. 28, 2009) (citing Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994)).  However, an ALJ may rely on such an opinion where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, see id. at *8-9, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not "clearly inconsistent" with, the reviewer's assessment.  See Torres v. Comm'r of Social Security, Civil No. 04-2309, 2005 WL 2148321, at *1 (D.P.R. Sept. 6, 2005) (upholding ALJ's reliance on RFC assessment of non-examining reviewer where medical records of treating providers were not "in stark disaccord" with the RFC assessment).  See also McCuller v. Barnhart, No. 02-30771, 2003 WL 21954208, at *4 n.5 (5th Cir. 2003) (holding ALJ did not err in relying on non-examining source's opinion that was based on an incomplete record where he independently considered

medical records dated after the non-examining source's report).

Ferland v. Astrue, No. 11-CV-123-SM, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011).

Here, the ALJ reviewed the entirety of Nelson's medical records, including records post-dating July 2012, and determined that Dr. Fairley's opinion was "generally consistent with the claimant's reported ability to sustain extensive activities of daily living and with the limited objective findings on record." Admin. Rec. at 22.  The record supports that conclusion.

As the Acting Commissioner notes, Nelson points to no evidence in the record that suggests a sustained worsening of Nelson's back problem after July 2012.  In other words, Nelson fails to point to medical evidence after July 2012 that establishes any "greater limitations" than those assessed by Dr. Fairley.  Ferland, 2011 WL 5199989, at *4.  And, the evidence in the record indicates that, after July 2012, Nelson complained of lower back pain, his reported pain level ranged between no reported pain and 8/10, and Dr. Sharma continued to note "tenderness over the paraspinal muscles in the lumbar region," but otherwise normal musculoskeletal and neurological findings. See, e.g., Admin. Rec. at 340, 334, 350-351, 356, 360, 366, 370,

12

393.)  That is consistent with Nelson's complaints and reported
pain levels, as well as Dr. Sharma's clinical findings, recorded
prior to July 2012.  See, e.g., Admin Rec. at 224-25, 230-231,
259-260, 265-266.


     Moreover, Nelson's argument that the MRI "raised the
possibility of nerve compression" (cl.'s Mot. to Reverse, p. 4)
is inconsistent with the interpretation of the MRI by the
radiologist who reviewed the results and stated: "no clear focul
neural compression," and "I do not see any clear indication that
the root is being compressed."  Admin. Rec. at 332.  And, while
the recommendation of Dr. Sharma is not consistent with Dr.
Fairley's assessment, the ALJ permissibly afforded Dr. Sharma's
opinion "little weight" (Admin. Rec. at 22) for the reasons
discussed below.  Accordingly, the record supports the ALJ's
determination that Dr. Fairley's opinion was "generally
consistent" with the record as a whole, and the ALJ did not err
in relying on Dr. Fairley's report in her RFC analysis.


## II.  Dr. Sharma's Report

     Nelson further argues that the ALJ erred by giving little
weight to the opinion of his treating physician, Dr. Sharma.
According to Nelson, in making this determination, the ALJ
failed to adequately consider the relevant regulatory factors

and applied an incorrect legal standard.  Nelson also argues the
ALJ should have considered Dr. Sharma's opinions as to each of
Nelson's limitations separately, and sought clarification
regarding the basis for Dr. Sharma's opinions.

Dr. Sharma has been Nelson's treating physician since
November 2010.  The "Medical Source Statement of Ability to Do
Work-Related Activities (Physical)" he prepared in May 2013,
indicates that Nelson cannot lift or carry more than 10 pounds,
can stand or walk for no more than 2 hours (in an eight-hour
work day), can sit for no more than six hours (in an eight-hour
work day), cannot climb, balance, crouch, or crawl; can
occasionally kneel and stoop; can only reach, handle or finger
for less than two and a half hours (in an eight-hour work day);
and that Nelson's exposure to certain environmental conditions
must be limited.  Admin. Rec. at 380-383.  Despite the "Medical
Source Statement of Ability to Do Work-Related Activities
(Physical)" form's explicit instructions, Dr. Sharma failed to
provide any explanation for the limitations he recommended, or
indicate any factors that supported his assessment.  Id.

Having reviewed the record, the court concludes that the
ALJ could properly limit the amount of weight given to Dr.
Sharma's opinion.  As set forth herein, the ALJ adequately

14

explained her reasons for discounting Dr. Sharma's opinion, and the record lends substantial support to her finding that his opinion was inconsistent with much of the record evidence.

"The opinion of a treating physician must be given controlling weight if it is well supported and not inconsistent with other evidence in the record." Eley v. Colvin, No. 14-CV-165-JL, 2015 WL 1806788, at *2 (D.N.H. Apr. 21, 2015) (citing 20 C.F.R. §§ 404.1527(c)(1) and 404.1527(c)(2). However, the ALJ "may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory." Marczyk v. Astrue, No. 08-330A, 2009 WL 2431464, at *3 (D.R.I. Aug. 7, 2009) (citing Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988)). If the ALJ does not afford controlling weight to the opinion of a treating source, "the ALJ must 'give good reasons' for the weight afforded that source," which means that "the ALJ's order 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight.'" Eley, 2015 WL 1806788, at *2 (quoting 20 CFR § 404.1527(c)(2) and Delafontaine v. Astrue, No.

1:10-CV-027-JL, 2011 WL 53084, at *13 (D.N.H. Jan. 7, 2011))
(additional citations omitted).

Nelson argues that the ALJ erred by failing to take into
account all of the factors laid out in 20 CFR § 404.1527.  These
factors include: the length of the treatment relationship and
frequency of examination; the nature and extent of the treatment
relationship; the supportability of the opinion; the consistency
of the opinion with the record as a whole; and whether the
source is a specialist.  See 20 CFR § 404.1527.  However, an ALJ
need not "explicitly take account of all the factors articulated
in 20 C.F.R. § 404.1527(c) in determining what weight to give a
treating physician's opinion so long as the court is 'able to
discern the rationale the ALJ used to reach his determination
and that determination is founded on 'good reasons' that are
supported by substantial record evidence.'"  Eley, 2015 WL
1806788, at *2 (quoting Figueroa v. Astrue, No. 11-CV-100-PB,
2012 WL 2090517, at *6 (D.N.H. June 7, 2012)).

The ALJ gave four reasons in support of her determination
that Dr. Sharma's opinion was entitled to little weight.  First,
she indicated that Dr. Sharma's opinion failed to "explain the
basis for his limitations and is wholly inconsistent with his
exam notes, which consistently indicate normal objective exam

16

findings and minimal complaints." Admin. Rec. at 22. That
finding is supported by substantial evidence in the record.
Many of Dr. Sharma's treatment notes indicate that Nelson "has
no concerns" or "denies any pain." See, e.g., Admin. Rec. at
224, 230, 237, 240, 262, 291, 356, 370, 384. And, while Dr.
Sharma's treatment records certainly make clear that Nelson
suffered from on-going back pain (see, e.g., Admin. Rec. at 227,
234, 247), as the ALJ noted, the records also consistently
indicate that Nelson maintained full strength in his
extremities, a normal gait, full range of motion in his
extremities, intact sensation and symmetrical reflexes (Admin.
Rec. at 21). See, e.g., Admin. Rec. at 231, 235, 248, 257, 263,
269, 326, 352, 360, 366, 386, 393.[1]

Second, the ALJ determined that Dr. Sharma's opinion was
not consistent with Nelson's reported abilities to perform yard
and household chores throughout the period at issue. That
determination is also supported by the record. See, e.g.,
Admin. Rec. at 195-202, 307, 312. Nelson's Function Report
indicates that he could vacuum for about 45 minutes, do laundry
for an hour, wash dishes for 30 minutes, take out the household

---

[1]     Indeed, Nelson himself testified that the only limitation
Dr. Sharma imposed upon him was to not "pick up anything too
heavy because of the strain on [his] back."  Admin. Rec. at 48.

trash and take his dog outside for short walks. Admin. Rec.
196-197. And, Nelson indicated to Dr. Reed that, on a typical
day, he performs approximately 90 minutes of yard work. Admin.
Rec. at 307. The ALJ properly concluded that Nelson's
performance of such activities is simply not consistent with Dr.
Sharma's opinion that Nelson had a less than sedentary work
capacity, with limited ability to use his hands and arms.

Nelson argues that the ALJ cannot rely on Nelson's
performance of these activities because they were not performed
on a 40-hour per week basis, and could be performed on Nelson's
own schedule. To the contrary, it was perfectly valid for the
ALJ to take into account Nelson's reported daily activities when
determining how to weight Dr. Sharma's opinion. Indeed, 20 CFR
§ 404.1527 requires that an ALJ consider the consistency of the
doctor's opinion with the record as a whole. Nelson's argument
might have merit had the ALJ relied entirely upon Nelson's
reported activities in determining his RFC, but that is not what
happened here. Instead, in the context of considering what
weight should be given to Dr. Sharma's opinion, the ALJ reviewed
Nelson's daily activities and determined that these activities
were not consistent with the limitations prescribed by Dr.
Sharma. There was no error.

Third the ALJ noted that "there is no indication of any diagnosis or even complaints that would begin to support limitations in handling, fingering and reaching during the period." Admin. Rec. at 22. Nelson takes issue with that finding because, he argues, the ALJ should have sought clarification from Dr. Sharma regarding his reasons for the recommendation. However, under the facts of this case, the ALJ had no duty to contact Dr. Sharma. Such a "requirement is triggered '[w]hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled.' 20 C.F.R. § 404.1512(e). If, however, there is sufficient record evidence to resolve the claim, the ALJ is under no obligation to re-contact a medical source." Young v. Astrue, No. 10-CV-417-JL, 2011 WL 4340896, at *7 (D.N.H. Sept. 15, 2011). Here, there was substantial evidence in the record upon which the ALJ could rely to resolve Nelson's claim. Thus, the ALJ's decision not to seek clarification from Dr. Sharma is not reversible error.

On that same point, Nelson also argues that the ALJ should have considered Dr. Sharma's opinions as to Nelson's limitations separately. But, as discussed, the ALJ's determination to discount Dr. Sharma's opinions did not rest solely on her finding that there was no evidentiary support for the hand use

limitations he recommended in the record.  She also relied upon
the fact that Dr. Sharma provided no explanation for any of his
recommended limitations, the inconsistencies between Dr.
Sharma's recommended limitations and his treatment notes, and
the inconsistencies between Dr. Sharma's recommended limitations
and Nelson's reported activities.  For that reason, Nelson's
argument lacks merit.

Finally, Nelson takes issue with the ALJ's somewhat limited
discussion of the length and extent of Nelson's treatment
relationship with Dr. Sharma.  However, as the Acting
Commissioner points out, the ALJ did note that Dr. Sharma was
Nelson's "treating physician," and indicated that Nelson had
first visited Dr. Sharma in October 2010.  Admin. Rec. at 22.
While greater detail would have been preferable, as discussed
above, "the regulations do not require an ALJ to expressly state
how each factor was considered, only that the decision provide
'good reasons' for the weight given to a treating source
opinion."  Bourinot v. Colvin, 95 F. Supp. 3d 161, 177 (D. Mass.
2015) (citation omitted).  And, for all the reasons set forth
herein, the ALJ's analysis of Dr. Sharma's opinion meets that
requirement.

Nelson's remaining allegations of error are without merit
because the record adequately supports the ALJ's conclusions.
Because the ALJ could properly conclude that Dr. Sharma's
opinion was not supported by much of the evidence in the record,
and was inconsistent with Dr. Sharma's own treatment notes, the
ALJ was not required to give Dr. Sharma's opinion controlling
weight.

### Conclusion

This court's review of the ALJ's decision is both limited
and deferential.  The court is not empowered to consider
claimant's application de novo, nor may it undertake an
independent assessment of whether he is disabled under the Act.
Rather, the court's inquiry is "limited to determining whether
the ALJ deployed the proper legal standards and found facts upon
the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31,
35 (1st Cir. 1999).  Provided the ALJ's findings are properly
supported by substantial evidence - as they are in this case -
the court must sustain those findings even when there may also
be substantial evidence supporting the contrary position.  Such
is the nature of judicial review of disability benefit
determinations.  See, e.g., Tsarelka v. Secretary of Health &
Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must
uphold the [Commissioner's] conclusion, even if the record

arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Acting Commissioner and claimant, the court necessarily concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of her decision.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 8) is denied, and the Acting Commissioner's motion to affirm her decision (document no. 10) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 30, 2016

cc:  Karen B. Fitzmaurice, Esq.
     Penelope E. Gronbeck, Esq.
     T. David Plourde, AUSA